Our final case on the calendar is Bluetooth SIG Inc. v. FCA US. May it please the Court, Judith Powell, on behalf of Appellant FCA US LLC, I'd like to reserve three minutes for rebuttal. The First Sale Doctrine holds that with certain limited exceptions, a trademark owner's right to control distribution of its product terminates after the first sale of the product. We submit on the record evidence here the Doctrine bars Bluetooth's claim in its entirety. I will first address the issues raised by the Court in its February 22 order regarding the significance of disclosure on the Doctrine. As this Court recognized, the Supreme Court instructs that there is no reason why a mark should not be used collaterally to say that the trademarked product is a constituent of the article now offered. Both Prestonetz and this Court's Inesco decision further teach that if the public is adequately informed that the second seller repackaged the product, the public is not likely to be confused or deceived. Therefore, in the case of repackaging, including repackaging that incorporates constituent products in the product now offered, when there is only collateral use of the mark and adequate disclosure regarding the second seller's role in the product now offered, the First Sale Doctrine bars an infringement claim. The record evidence here indisputably demonstrates that FCA's use of the Bluetooth or B symbol is collateral only to indicate a constituent of its cars and trucks, and FCA informs the public who provided this repackaged overall product. So what is that evidence? First, the vehicles as offered for sale are not branded Bluetooth or with the B. Frank Travato, head of infotainment systems for FCA, testified at one SER 148 to 149 that after a consumer has bought the car and after he has paired his own phone with the radio in the car, the B appears electronically on the console screen in order to let the consumer know that his phone is connected. Ms. Eichrecht, in charge of the Court's order that you are now taking the position that the record indisputably shows that adequate disclosure was made by FCA? Your Honor, yes. Is that a question of fact that we can determine here on appeal, or do we have to send that back for determination? I mean, we'll all hear from counsel whether that's really an undisputed fact or not, but does that warrant a remand then on that question? Your Honor, the evidence in the record shows that no reasonable jury could conclude otherwise, and therefore, I believe that — But is that our role sitting here in the Court of Appeals, or do we remand for the district court to make that determination? I don't know what the district court's going to do with that. If it is disputed, the district court may grant summary judgment, probably would need to solicit additional briefing on that issue. I didn't scour the briefing below closely enough to see whether this was presented. And then the district court may very well let that issue go to the jury. So how can we make that determination at this point? I believe that the evidence is undisputed and that this court can reverse. Alternatively, this court can remand for the first sale doctrine to be a part of the defense in the case. Other evidence makes this very clear so that it is undisputed that there is disclosure in this case. That evidence includes that the vehicles are marketed and sold under the famous Jeep, Dodge, Ram, and Chrysler and Fiat brands, and FCA's very substantial marketing, billions of dollars worth over the years of radio, print, social media, and television marketing all inform the public about who is offering this product that is now on the market, and none of it refers to the Bluetooth or B symbol. That's in the record at 7 ER 1350 to 52. Can I ask, what's the confusion that we're supposed to analyze here, that Bluetooth created the car or that the FCA created the Bluetooth head unit? So the confusion to be analyzed is whether the public is confused as to whether there is an affiliation or whether there is source or endorsement as to the use of the mark. And here, there's no such evidence, and there's no such evidence in the record in terms of actual confusion or even survey confusion. Bluetooth did not submit a survey that would show likelihood of confusion, and there is no actual confusion in the record. So the marketing, the few modest uses that FCA makes are in websites and model catalogs where the prominent website headings show either the Uconnect brand, belongs to FCA, or the vehicle brand name, such as Jeep Dodge Ram. Unless counsel, we find that the first sale doctrine is a complete defense in this case, isn't confusion something that's got to be tried to the jury? Not when there's no evidence of such confusion. Here, there is no evidence in 18 years of use of the mark by FCA. Not a single instance of actual confusion. No evidence submitted by... Would the district court in this case reserve issues of confusion for the jury? I'm trying to figure out, given the scope of the certified question here, we're not on direct appeal. Summary... So as I understand it, and correct me if I'm wrong, the certified question is whether the FCA, an incorporated product situation, right? The question on appeal is whether the first sale doctrine applies in this case. Can the first sale doctrine bar the claim in its entirety? The answer is yes. The first sale doctrine can. So let's say that we agree with you and find that the first sale doctrine is a complete defense, meaning that the role of likelihood of confusion really doesn't factor into the analysis. Is there anything left to be determined by the court? What about... Are there any exceptions, or does that just completely end the case? So setting aside the disclosure issue that we talked about. Right. Just to wrap up the disclosure issue, I will point out that there actually is a notice in the brochures, the few brochures that have use of Bluetooth or B in them, that says, quote, Bluetooth is a registered trademark of Bluetooth SIG, Inc. Do you have an ER site for that? The citation for the brochure, the brochure is a 23-page brochure, and the brochure appears at 1 S.E.R. 94 to 117. I believe the disclosures are all together at the end, perhaps 116 or 117. So the marketing materials and the products themselves fully inform the consumer that this product that is now offered is an FCA product. And so that answers, I believe, the court's question about disclosure. But turning to other points that go to this question of likelihood of confusion or exceptions to the rule. First, there are four key issues that, there are four key facts that make clear why the first sale doctrine applies here and that distinguish this case from any case on which Bluetooth would rely to the contrary. First, the products here were made for the sole purpose of being installed in FCA's vehicles. Second, the products, the licensees who had the products made and certified under Bluetooth's procedures were the ones who affixed the mark to the product and they, and embedded it in the software in the product, and they did so pursuant to their licenses. Third, the incorporation of the product in the vehicle did not, did not materially change the product. It functioned as it was intended to. The outer box and the software within it that the suppliers had provided was not changed by installation. Isn't there some dispute about that, that in at least some cases the way it was installed affected the way that it operates? I thought that the, you know, they've raised some question about that. They did raise one issue that they said there was one instance where they said there was an internal concern about the, about whether there was an impact. And the evidence is at 3 FER that that internal concern had to do with a product that was not in market. It was one in development. And so there is nothing that made it to the marketplace, there's no evidence that made it to the marketplace about any change in installation. And then lastly, as I already noted, millions of vehicles sold and 18 years of use and zero evidence of actual confusion. So on the, on Your Honor's point about the likelihood of confusion, Sebastian makes clear that the first sale doctrine can apply even in the face of confusion. And none of the, none of the cases on which Bluetooth relies have a full-blown analysis of likelihood of confusion factors. Rather, even on, even on preliminary injunctions, even on summary judgment, the courts make the general observation that the circumstance of the context of those sales is not likely to cause confusion or not likely to cause the kind of confusion that the trademark law is intended to address. And so automotive gold, this Court's automotive gold even acknowledged the validity of reasoning in two cases that are very analogous here. One is the Alexander Binzel case where automotive gold noted that the products at issue were made for the purpose for which the defendant used them. That they were, and that is exactly the case we have here. And the first sale doctrine appropriately applied there. The automotive gold. So can I ask, if the first sale doctrine applies and we reverse the district court and he, the district court grants summary judgment on the first sale doctrine, will that end the litigation? Yes, Your Honor. Okay. All right. But if we answer the question that's certified very narrowly and say, well, yes, I think the district court got it wrong. The first sale doctrine does apply in the product incorporation context. Whether likelihood of confusion plays a role to what extent, we defer those questions. Then you go back for further litigation, correct? That would be correct. You've got a number of other defenses. That is correct. To proceed to trial. And so is it your view then that if we answer the certified question in that way, everything else is sorted out below? The court is not restricted to just the way the court, the way the district court certified the question. Under the Yamaha case that is cited in our brief, the Supreme Court indicated, Judge Ginsburg indicated, that before the court is the order that was certified, and this is any order that is subsumed within it. So, finally, I'll just address. No, I recognize that we can go beyond that. The question really is to what extent does likelihood of confusion play a role in it? Given the relevance of the likelihood of confusion on all of the other issues that are still at play in this case, in order to eliminate most of the issues in this litigation, we would have to find on this record that, number one, we can reach the disclosure issues ourself in the first instance given the record, and then, number two, the likelihood of confusion really doesn't play a role in the first sale analysis, essentially giving you a complete defense. Am I understanding the issues correctly? The first sale doctrine can give a complete defense. Right. We'd have to agree with that for it to materially advance the litigation in terms of resolving most of the issues in the case. Yes, Your Honor. Otherwise, it gets remanded by this Court determining that the first sale doctrine should be allowed as a defense. Lastly — Along with all of the other defenses that are still on the table below. That is correct. But it's an important defense to be reinstated in the case, and it was inappropriate to dismiss it.  Couldn't the district court grant some re-judgment in your favor and then end the litigation? That is correct. Okay. I'm running out of time, but I will note that there are two exceptions, neither of which applies here. There's no material change. That is, there's no difference between that which is sold by FCA and what consumers would expect, which is the test for a material alteration. The district court didn't reach that issue, correct? The district court did not reach that issue, but it is an issue for application of the first sale doctrine. The other exception, quality control, also does not apply because Bluetooth had no quality control, and that would make no difference in what's delivered to the consumer. Thank you, Your Honor. Our questions ate up most of them. There's a minute left, but I'll put three minutes on the clock when you come back for rebuttal. Mr. Brown. Good morning, Your Honor. I'm Peter Wilsey with the firm of Brown Rudnick, representing the plaintiff appellee, Bluetooth SIG, Inc., which I'll refer to as the SIG. In the courtroom with me today is the Bluetooth SIG's executive director and CEO, Mark Powell. I'm going to deviate from my outline just to focus on some of the issues that you've brought up. I think as an initial point, we need to understand that we're dealing with certification marks. Those are very different from traditional trademarks. Traditional trademarks tell you, the consumer, where a product came from. A certification mark tells you something very different. It tells you that this product that is branded with this mark meets a certain standard. So in this case, what does Bluetooth tell you? When I buy a phone that has Bluetooth functionality, and then I buy a car that has Bluetooth functionality, I know they'll talk to each other without wires. That's what it means. How does that work? My client certifies and qualifies products to make sure that they meet this standard. That's what FCA does not do. So when we're thinking about disclosures, yeah, they tell you that they made the car and that it's a Jeep. And somewhere in fine print, they'll say the Bluetooth trademark is owned by somebody else. What are they not telling you? What they're not telling you is that this vehicle has not been certified by the owner of the Bluetooth trademarks. They're not telling you that there's a... How is a customer supposed to know that they could use the Bluetooth capability if they don't say it's Bluetooth capable? Right. Well, what happens is consumers day to day can rely upon that and know that it will work because someone is making sure that anything with a Bluetooth brand complies with their standards. So a consumer... And here's the important thing. The disclosures that have been discussed in the Prestonettes case, the Inesco case, the point of them was so that consumers know what they're getting. They know with the Precious Moments figurines in the Inesco case that I'm buying these figurines, but they've been repackaged by somebody else. What you don't know when you buy a Fiat Chrysler vehicle is that it hasn't been qualified as meeting the standards for Bluetooth wireless technology. The head unit has been, so they buy from Harman or Panasonic head units that have been qualified. But then they take those, they combine them with antennas, sensors, other components, and they create this Uconnect infotainment system, which is in the car. The consumer knows none of this. So what would an appropriate disclosure be here? It could be this vehicle contains a Bluetooth-enabled radio head unit manufactured by Harman. FCA has combined that radio head unit with other components to create the Uconnect system. Neither this car nor that system have been qualified by the owner of the Bluetooth trademarks. That's what consumers need to know because they're comparing a Fiat Chrysler vehicle and a Ford vehicle. Ford has qualified its vehicles. So if the district court were to order, I mean, if that disclosure were made, is that the limit of the relief that you could get? Yeah. Well, no, I think we could get relief in the form of all the sales of automobiles they've made without making that disclosure. And that's, you know, it seems at first glance like, look, the issue of whether disclosures were adequate should be something that should be at trial. But in this case, there is nothing in the record that constitutes a disclosure of what needs to be disclosed, which is that its products have not been qualified, unlike all of its competitors. So if I'm a consumer and I'm considering a Ford vehicle and I look through the manual and it has Bluetooth and I go and I look at a Fiat and it has Bluetooth, I don't know that that one actually has been certified. This one has not. They're not telling you that. That's the type of disclosure that needs to be made. And because there's nothing... What disclosure needs to be made, needs to be determined below, right? Do we remand at this point for that? Well, I... What relief are you asking for in light of the disclosure issue? Well, in light of the fact that there are no, I mean, there was over a year of discovery. They produced, they and their suppliers produced, I think, over 36,000 documents, 410 pages of documents. They can't point to one disclosure along the lines of what I'm saying needs to be disclosed. In the complete absence of any evidence like that, this is something that shouldn't be put in front of the jury to confuse them. This should just be put to the jury as a trademark infringement case. The issue has likely hit a confusion, which, by the way, should always be part of a case involving trademark infringement claims. So, because there is no, I mean, the fact that they disclosed who made the automobile, that's completely irrelevant. It's not what needs to be disclosed here. Here, each of the cases, like Inesco, Inesco, great decision to my view, but the whole point was that the court was recognizing that the defendants had to tell consumers something very specific, and that is that they package this. Press nets, same thing. The court looks at the facts and says, okay, you can resell the plaintiff's product using its marks as long as you make very specific statements. I mean, the statements in press nets not only were very, very specific in terms of content, but the court went so far as to say that every word has to be in the same type, same color. I mean, the point is, consumers need to be informed of something. They're not being informed at all. There's just an absence of evidence here. So this is a defense that the lower court properly struck down and should not be put in front of a jury. I was just going to have you address the merits before your time runs out and the certified question. How do you reconcile the district court's narrow view of the first sale doctrine in light of press the nets? So the traditional first sale doctrine is what you would think it would mean. It is that if all I do is stock, shelf, display, resell a product without altering it, that's protected. Why is it protected? We have to keep in mind the twin principles or twin purposes of trademark law. One is that you want to enable businesses to be able to trade on the reputation that they establish, and trademarks help them do that. The other is you want to avoid consumer confusion. So under that traditional first sale doctrine, you serve, but you're not impairing either of those purposes. If I'm a retailer and I sell Nike shoes, okay, without altering them, I'm not hurting the brand, I'm not confusing consumers. Over time, courts have realized that sometimes you can do other things. You can alter the packaging, you can do something with the products, but in each of those situations like press the nets and an escrow, you have to tell consumers what you're doing, and that's what we don't have here. Right, but the district court, as I read the summary judgment order, did not rely on the lack of disclosure. It just said categorically that the first sale doctrine doesn't apply when you're incorporating the product. So are you defending that reasoning from the district court? No, I think the district court appropriately looked at the Sebastian case and looked at that language, and it doesn't talk about disclosures, but the fact is I believe we do need to take into account whether disclosures were made because they are doing something with a qualified radio head unit product. And so we should consider press the nets and an escrow, but with the evidence of record, there's nothing that suggests that they've ever made any disclosure to consumers that would meet the requirements of an escrow or press the nets. Why is the default that they have to disclose that it's not certified? Why couldn't it just be that it's okay that they're not disclosing that it is certified? It's very important for this reason. If I buy my Fiat car and suddenly my Bluetooth phone won't pair with the infotainment system there, I need to know that that's probably Fiat Chrysler's fault because they didn't qualify the product to make sure it would work. Otherwise, I'm going to think Bluetooth doesn't work. That damages our brand and a brand that every other major automobile manufacturer has paid a license to use and qualified their products. They're the only ones that don't. And that's what consumers need to know. Whose fault is it if Bluetooth doesn't work in a car? Okay. Thanks. Any questions? Well, I guess the difficulty I have is how do you communicate that you have a Bluetooth enabled device unless you have that certification? So I guess you're saying any time any device has Bluetooth, they have to then register with... Qualified. Yes. For the whole program to work. And this is... Obviously, it benefits businesses who properly qualify their products and use Bluetooth marks. It helps them sell. But it helps consumers too. You know when you buy this, it communicates with that. Even though they come from different manufacturers. The only way that works is if people qualify the products they're actually selling. And here, FCA isn't merely reselling head units. And they keep talking about this like they haven't altered the head units. Well, you're not selling head units. You're selling a car. It's not what's going on here. Is it... Well, this is a two-part question. Is it relevant to the disclosure question? Whether in fact the incorporation of the head unit into the car might affect its operation? And secondly, can you address the point made by your friend on the other side that there's no evidence that it actually does affect or impair the operation of the head unit when it's put into the car? Well, that's a matter of dispute as to whether it impacts... The way that they put this together, whether it impacts the functionality of the car. We did have testimony from one of their engineers who talked about a bevel problem, which we've cited to in our brief. But the first question... I'm sorry, Your Honor. Does that matter? I mean, in your view, do you have a right to disclosure whether or not in practice it actually does make a difference to the operation of the product? Yeah. I mean, I think that we do have some facts that show that they had issues relating to a bevel that impacted the Bluetooth functionality of the car. Now, what we don't know is what our testing requirements would have shown had they properly qualified their vehicles. It boggles the mind, really, that they've chosen to litigate for years over this instead of doing what other manufacturers do, which is qualify your cars, so that we all make sure that this system of certification works. In closing... I see I have about three minutes left of time. Can you address the question of whether or not... I assume, obviously, you disagree with this, but if we remand and the district court then finds that the first sale doctrine does apply, would that end the litigation? No, because I think what would happen is the judge would have to consider what type of disclosure was appropriate and what disclosures were made. And I believe that the judge would say that's a matter for the jury to determine whether they were appropriate or not. Because the jury can determine what an ordinary purchaser would think when they saw Bluetooth and these apparent disclosures that they've made, like the name of a vehicle's a Jeep made by Fiat Chrysler. But assuming that there was no material dispute on the disclosure question, my question is really, is it a complete defense and would it end the litigation? The majority of case law still focuses on the issue of whether there's a likelihood of confusion. I mean, they have cherry-picked some language from some cases to say that first sale doctrine can be a complete bar. But in most cases, and I'll cite to a few, even when first sale doctrine is considered, it's accompanied by an analysis of whether there's a likelihood of confusion. That's always has to be an important part of any trademark infringement. What work does it do then? If there's no likelihood of confusion, then there's no trademark infringement. Yeah. If there's no likelihood of confusion, we lose. There's no question about that. Right. So I just don't understand why likelihood of confusion is necessary for the defense because then it does no work. Well, you could say if there's... The first sale doctrine would shield you. I mean, it goes hand in hand, really, because if you think about the different cases, so talk about Sebastian Long's, which has that very strict construction of the first sale you can assume if that's all that's going on, there's no likelihood of confusion. But when you get into the area of cases that involve parties that do more than that, that repackage things, that rebrand things, do different things. In those cases, you have to look at whether there's a likelihood of confusion. Okay. One, you might be protected and that tips the scales a bit, but you can't ignore whether there's a likelihood of confusion, which is going to be based in part upon what those disclosures were in any particular case. So in your view, if we were to reverse the district court and find that the first sale doctrine does apply in the incorporation context, then there's a lot of litigation left to be done. There is. For example, the exceptions to the first sale doctrine that this court never reached, this whole disclosure issue. There is. I mean, I would say, though, that even under Pressonetz and Inesco, it's clear that you have to make some disclosures. And if you think about what type of disclosures are needed here, there's no evidence that they made any. So the litigation would still go on, but they just wouldn't be able to raise this first sale defense at trial. But do you want us to reach this question? It seems like you would want us to answer whether or not the district court is right or wrong. Correct? Because if the district court's wrong, then we remand it back, you go to trial, you prevail, then we restart the litigation all over again if the district court was wrong on the first instance of first sale doctrine. I mean, I believe that the district court was right in throwing out the first sale defense, but I would argue that this court should also throw it out, but for a different reason, which is that we have to acknowledge that Pressonetz and Inesco are case law. So the first sale doctrine is a little bit broader than what Judge Jones may have thought it was. But in the complete absence of any adequate disclosures, it still should be stricken from the case. But to answer the question, we then have to look at the record and reach the disclosure question, which the district court never did? That's correct. And that involves a factual evaluation, which we don't do at the Court of Appeals. I understand that. I see I'm out of time. Thank you very much. Very helpful argument, counsel. Thank you. I'll go back to the notice issue. Neither Pressonetz nor Inesco requires a notice. Only that the public be adequately informed. And Inesco says that what we're seeking to prevent is consumer confusion regarding the second seller's involvement. That's the word that the court uses. Here there has been full informative disclosure to the public through FCA's substantial marketing that its brand groups are the ones who produce the vehicles that are offered. They're the ones who have put together the components. That's FCA's involvement. The purpose of notice is to minimize confusion. Here we have zero confusion. When there's already zero, there is no need for further notice to be out there. There's no actual confusion, no survey suggesting there's a likelihood of confusion, and there's no evidence that consumers even believe that cars are certified by Bluetooth. The words certified and certification don't appear in any of FCA's marketing. So this whole idea that the public needs to be informed that the cars aren't certified is ridiculous. There's no evidence to support that consumers need to be notified of that. The lack of confusion over 18 years in millions of vehicles makes that very clear. There's zero evidence that would support this need for any notice. FCA's licensees fully... Well, what about your colleague's argument that, well, if something goes wrong, they In 18 years, not a single consumer has ever called Bluetooth or written a letter to Bluetooth saying my phone is not working in my FCA car. So turning to the certification, the licensees, Bluetooth licensees who stand in Bluetooth shoes fully certified the head unit under the Bluetooth procedures. And then the head unit goes into the car and is exactly... This incorporation is exactly the circumstance that Preston Etz presented to the Supreme Court. Incorporation is a case, is the case that the Supreme Court enunciated the doctrine in in the first place. Clearly, it applies here. The first sale doctrine does. Trademark infringement cases are often decided on summary judgment questions. And so there is no reason why this case cannot similarly be decided on summary judgment. Lastly, the last point that Mr. Wilsey made was that FCA just needed to comply. And that's to make the certification system work. But the district court found that the evidence showed that Bluetooth lacks quality control in the automotive industry. Those were exact words of the district court. And so its certification system doesn't work. There is no quality control by it with respect to automobiles. I see my time is up. All right. Thank you very much counsel for your argument in this case. The matter is submitted. That completes our argument calendar for today and for the week. So court is adjourned. Thank you.
judges: NGUYEN, MILLER, BUMATAY